Cowen, J.
Independently of the production and use of this document before the examiners, it may be conceded that, to compel its production as primary evidence, a cross bill must have been filed for the purpose of discovery ; (Kelly v. Eckford, 5 Paige, 548, and the cases there cited;) and that, without such a proceeding, the defendants would be confined to secondary evidence after notice to produce had been given. (Gresl. Eq. Ev. 195.)
In the case before us, however, the original was produced, the primary evidence was before the examiners, and witnesses were actually interrogated and their answers taken down upon the point of its verity. Then, upon the witness who made the original being produced, it was withdrawn from his observation. That it was a material paper, and in its own nature would form a proper exhibit in the cause, is not denied; nor that it was in fact used before the examiners as evidence by both parties. That it was not marked as an exhibit can make no difference, if it should have been so marked. The omission, if it were material, must be set down to the mistake of the offi *519 cer ; and, like similar mistakes, be corrected by motion. ( Vid. Toral. Diet. “ Exhibit.”)
The vice-chancellor was right, therefore, in holding that the paper had become an exhibit in the cause. The production and proof of a paper before an examiner makes it an exhibit in fact, (Toml. Dict. “ Exhibit;”) and the party producing it has no power without the consent of his adversary (and such consent is not satisfactorily shown in this case) to qualify the effect of the production and proof. Such an act at nisi prius would have made it evidence for both parties. (Kelly v. The Dutch Church of Schenectady, 2 Hill, 105.)
In Willis v. Dyson, (1 Stark. Rep. 164, 166,) Scarlett, in opening the plaintiff’s case, alluded to a document material to the defendant as evidence, which the plaintiff intended to overcome by countervailing evidence. The defendant’s counsel insisted that he had a right to consider even this as amounting to proof of the document by the plaintiff. Lord Ellenborough said, that was claiming too much, though, if the counsel'had propounded the document as forming part of the plaintiff’s case, he could not afterwards have been allowed to retract. (See also Calvert v. Flower, 7 Carr. & Payne, 386.)
It never has been questioned that the production of a paper and an examination of witnesses in respect to it before a jury, the genuineness of the paper being proved or admitted, makes it evidence for both sides. So, I should think, if produced and proved before a master on reference ; (Gilbert v. Wetherell, 2 Sim. & Stu. 254;) and the act of afterwards withdrawing and withholding the paper might be punished as a contempt.
Upon obvious analogy, an exhibit before an examiner is at least subject to the use of both parties for the purpose of examining witnesses in respect to it, whatever may be the rule as to its inspection or production at the hearing. It is said that counsel must examine without inspection; and several cases are cited where, though the party has made an exhibit of a paper and taken depositions concerning it, yet the court has, on motion, declined to require its production for the inspection of *520 the opposite party. (Davers v. Davers, 2 Str. 764; 2 P. Wms. 410, S. C.; Wiley v. Pistor, 7 Ves. 409; McMahon, M. R. in Hare v. Collins, 1 Hogan, 193. 4.) These cases refer to the complainant’s exhibits, and the rule would seem to be confined, at least in its more rigorous application, to motions against him. (Fencott v. Clarke, 6 Sim. 8.) The motion in the court below was made against the complainant; and the cases cited should therefore govern us, unless the reason upon which they were founded is done away by the change in our form of conducting chancery examinations. The reason, so far as it can be collected from the English cases, is, that the defendant has no right to see the strength of the complainant’s cause till the hearing. (2 P. Wms. 410; 7 Ves. 411; Gresl. Eq. Ev. 129.) ' Even in England, it is not denied that you may examine respecting the exhibit; but you are bound to do so without inspection. It seems to me that the whole of this rests upon the course of the court. • The examination is conducted by the examiner in secret, on written interrogatories; and the rule is general and quite inflexible that the secrets of the examiner’s office shall not be disclosed to one party or the other, until after publication shall have passed. With us the examination is open and conducted as it would be before a jury. (2 R. 8. 109, § 89, 2d ed.) And the incidental right of seeing all documents produced before the examiner for the purpose of being referred to by counsel or witnesses at any subsequent stjage of the examination, would seem to follow from the analogous right which, as we have seen, would attend the production before a jury.
Whether the party making an exhibit and proving it before the examiner, would be bound to produce at the hearing either that or the depositions by which it was proved, is another question. We are referred to Hodson v. Warrington, (3 P. Wms. 34,) to show that he would not. (And see Gresl. Eq. Ev. 129.) It may be considered as a general rule that the party can select his proofs at the hearing from among all his papers and depositions coming up from the examiner’s office ; and that *521 his adversary is not entitled to use the whole evidence in the cause as he would be at nisi prius. Examiners and commissioners are but ministerial officers to aid in furnishing proofs. They do not determine upon them like a judge and jury. The office of the latter is to be performed by the chancellor. But it by no means follows that in the framing and concoction of evidence for the use of the chancellor, evidence which may be brought to bear with fatal effect against a party, he should not be allowed the same means as before a jury to overcome it both by inspection and cross-examination. By stopping short of this, we lose one great purpose of the statute which throws open the doors of the examiner. It was mainly intended to prevent a party being concluded or affected by the old method» This was complained of as inquisitorial. We cannot obviate the objection entirely without governing examinations in chancery by the same rules which prevail at nisi prius.
I am, therefore, for affirming the vice-chancellor’s order.
Bockee, Senator.
It is clear to my mind, beyond controversy, that the original paper was used in evidence, and was substantially an exhibit in the cause. It ought therefore to be in the custody, and is in the power of the court. The appellants admit they have possession of the paper. The order of the vice-chancellor directing it to be produced and to remain with the examiner for the respondents’ use during the examination of their witnesses, was properly granted, and ought to be affirmed.
All the members of the court concurring in this result, the order of the vice-chancellor was unanimously affirmed»